Rockingham
No. 6969

Sam J. Traficante & a. v. David A. Pope & a.

June 30, 1975

*Sanders, McDermott & Kearns (Mr. Wilfred L. Sanders, Jr.,* orally) for the plaintiffs.

*Shute, Engel & Frasier (Mr. Francis J. Frasier* orally) for the defendants.

KENISON, C.J.  The issue to be resolved by this appeal is whether plaintiffs who own property on the east side of Ocean Boulevard in Seabrook, New Hampshire, may enforce certain restrictions limiting the use of the defendants' property to residential purposes only so as to prevent the defendants from operating an ice cream and food business on the west side of Ocean Boulevard. *Mullavey,* J., reserved and transferred plaintiffs' exception to the dismissal of their petition for a permanent injunction.

On June 5, 1944, Tavern Investment Corporation conveyed tracts of land on both sides of Ocean Boulevard in Seabrook, including the lots now owned by the plaintiffs and the defendants in this case, to Sun Valley Beach, Inc. (hereinafter Sun Valley) with the restriction that "no business of any kind shall be conducted on the premises (other than the business of purchase, sale and management of the properties by the Grantee, its agents or servants, successors or assigns), but the same shall be used for residential purposes only." By another deed dated April 13, 1945, Tavern Investment Corporation released the restrictions contained in the June 5, 1944, conveyance in so far as the property on the west side of Ocean Boulevard was concerned. *See Sun Valley &c. Co. v. Watts,* 98 N.H. 428, 430, 102 A.2d 504, 505 (1954). The release did not apply to the property located on the east side of Ocean Boulevard. *Id.* at 433, 102 A.2d at 507.

After subdividing the property Sun Valley conveyed it in small lots. On September 7, 1948, Sun Valley conveyed two lots on the east side of Ocean Boulevard between Lawrence and Haverhill Streets to Joseph L. and Florence R. Dunlap. The deed stated that "no business of any kind shall be conducted on the said premises, but the same shall be used for residential purposes only" and that the

"restrictions run with the land, and shall be binding upon Grantee(s), their heirs, executors, administrators or assigns." On May 16, 1971, the Dunlaps conveyed the two lots, "subject to all restrictions of record", to the plaintiffs, Sam and Stella Traficante.

By a deed dated August 21, 1953, Sun Valley conveyed two lots on the west side of Ocean Boulevard between Lawrence and 8th Streets to Hyder Realty Trust. Although the land located on the west side of Ocean Boulevard had been released from the general restrictions recited in the deed from Tavern Investment Corporation to Sun Valley dated June 5, 1944, the deed from Sun Valley to Hyder Realty Trust specified that "no business of any kind shall be conducted on the said premises, but that the same shall be used for residential purposes only." The deed further provided that the "restrictions run with the land, and shall be binding upon the Grantee, its successors or assigns." On December 1, 1970, Hyder Realty Trust conveyed the same two lots to M. Cynthia Childs who on January 21, 1972, conveyed the lots to the defendants, David and Suzanne Pope. While all of the deeds in the chain of title from Sun Valley to the Popes were properly recorded, neither the 1970 nor the 1972 deed repeated the restrictions on the use of the lots contained in the 1953 deed from Sun Valley to the Hyder Realty Trust.

The Trial Court (*Mullavey*, J.) found that the "land on the east and west side of Ocean Boulevard was not intended to be included in a general plan of development as a whole, but rather appears to be two separate tracts of land separated by a highway." As a result the court determined that the plaintiffs have no right to enforce restrictions placed upon the use of defendants' land.

Restrictions on the use of land by private parties have been particularly important in the twentieth century when the value of property often depends in large measure upon maintaining the character of the neighborhood in which it is situated. 2 American Law of Property § 9.24, at 402 (A.J. Casner ed. 1952); C. Clark, Real Covenants and Other Interests Which "Run With the Land" 170 (1947); 3 H. Tiffany, Real Property § 858, at 471 (B. Jones ed. 1939). Promises imposing restrictions on the use of land may be enforced at law and in equity between the original parties and their successors depending on the nature of the promise itself and on the type of relief requested. 5 R. Powell, Real Property § 671 (1974); *Burbank v. Pillsbury*, 48 N.H. 475, 482 (1869).

Enforcement of promises restricting the use of land as covenants running with the land at law (so-called "real covenants") requires a showing that the benefit or burden of the promise was intended to

run with the land, that the promise substantially altered the legal relations of the parties with respect to the land (*i.e.* the promise must "touch and concern" the land), and that a succession of interest existed between the promisor and promisee. 5 R. Powell, *supra* § 674, at 176; D. Hagman, Urban Planning and Land Development Control Law § 166 (1971); C. Clark, *supra* at 94; Restatement of Property, Introductory Note at 3161 (1944); 3 H. Tiffany, *supra* § 854. Fulfillment of these requirements permits owners of adjacent lands intended to be benefited by the promise and their successors to enforce it since the benefit of the promise is said to "run with the land". C. Clark, *supra* at 102: Restatement of Property, Introductory Note at 3153-54 (1944); *Foster v. Foster,* 62 N.H. 46, 55 (1882).

Even though a promise is unenforceable as a covenant at law because of failure to meet one of the requirements, the promise may be enforced as an equitable servitude against the promisor or a subsequent taker who acquired the land with notice of the restrictions on it. 5 R. Powell, *supra* § 679, at 200-01 (1974); D. Hagman, *supra* § 167; *see Nashua Hospital Ass'n v. Gage,* 85 N.H. 335, 338-39, 159 A. 137, 140 (1932). The rationale for enforcing promises restricting the use of land as equitable servitudes is that "he who takes land with notice of a restriction upon it will not in equity and good conscience be permitted to act in violation of the terms of these restrictions." C. Clark, *supra* at 170. The great weight of authority recognizes an equitable servitude as a property interest in the burdened land, appurtenant to the benefited land. 5 R. Powell, *supra* § 671, at 147; C. Clark, *supra* at 174. For a servitude to be appurtenant to the benefited land, there must be a showing that the parties to the original promise intended to benefit a particular lot and that the promise "touches and concerns" the lot. D. Hagman, Urban Planning and Land Development Control Law § 167, at 300 (1971); 2 American Law of Property §§ 9.28, 9.29 (A.J. Casner ed. 1952); *see Varney v. Fletcher,* 106 N.H. 464, 466, 213 A.2d 905, 907 (1965).

Whether the plaintiffs in this case may enforce the promise made by Hyder Realty Trust to Sun Valley in 1953 as either a covenant running with the land at law or as an equitable servitude rests on a determination that the original promisor and promisee intended to benefit plaintiffs' land. 5 R. Powell, Real Property § 673, at 155 (1974); 3 H. Tiffany, Real Property § 865, at 495 (B. Jones ed. 1939); *see* Restatement of Property § 537, Comments *a, c* (1944); *id.* § 544. If there was either an express or implied intent to benefit plaintiffs' lots, plaintiffs should be permitted to pursue their request for injunctive relief. Hagman, *supra* § 167, at 300.

Intent may be ascertained from the language of the instruments, conduct of the parties and the surrounding circumstances. *Carroll v. Schechter,* 112 N.H. 216, 219, 293 A.2d 324, 326 (1972); *Bouley v. Nashua,* 106 N.H. 74, 78, 205 A.2d 34, 37 (1964); *see* 5 R. Powell, *supra* § 673, at 169. Although the language of the 1953 deed from Sun Valley to Hyder Realty Trust was explicit that the use of the property was to be for residential purposes only and that the restriction was to be binding on the successors of Hyder Realty Trust which admittedly includes the defendants in this case, there was no indication in the deed that the restriction was intended to benefit anyone other than Sun Valley and possibly the abutters of the parcel which was subject to the restrictive covenant. Restatement of Property § 531 (1944).

Where a general scheme of development can be shown, the intent to benefit land retained or previously sold by the grantor-developer will be implied so as to permit enforcement of restrictions uniformly imposed in furtherance of the overall design. 5 R. Powell, Real Property § 679, at 208 (1974); *Varney v. Fletcher,* 106 N.H. 464, 466, 213 A.2d 905, 907 (1965); *Bouley v. Nashua,* 106 N.H. 74, 78-79, 205 A.2d 34, 36-37 (1964); *see* Restatement of Property § 531, Comment *d* (1944). Since the trial court found that the east and west sides of Ocean Boulevard had not been developed pursuant to a consistent plan preventing business use, no basis existed for implying an intent to benefit plaintiffs' property located on the east side of Ocean Boulevard by the promise made by Hyder Realty Trust to Sun Valley in the 1953 conveyance of property situated on the west side. Restatement of Property §§ 541, 544 (1944).

*Plaintiffs' exception overruled.*

All concurred.